PAULA CASTRO, Petitioner, *v.* INDUSTRIAL COMMISSION OF PUERTO RICO, ET AL., Respondents.

No. 321. Argued January 8, 1945.—Decided February 5, 1945.

*Virgilio Brunet* for petitioner. *Ángel de Jesús Matos, Joaquín Correa Suárez,* and *A. Sandín del Manzano,* for respondent Manager of the State Fund.

Mr. Chief Justice Travieso delivered the opinion of the court.

On December 2, 1942, Gregorio Hernández, a workman, while working in a field owned by his insured employer, was attacked by one of the oxen that were yoked to the plow with which he performed his work. The injured workman was confined in the hospital, by order of the State Insurance Fund, until December 29, 1942, on which date he was discharged and sent to his home, where he died on January 3, 1943, of cancer of the prostate gland.

On October 19, 1943, the Manager of the State Insurance Fund ordered the case dismissed on the ground that, according to the testimony of the physicians, there was no causal connection—required by law—between the accident involved and the death of the workman.

Feeling aggrieved by the decision of the manager, the beneficiaries of the workman appealed to the Industrial Commission, by a petition dated November 29, 1943, which was filed on the 30th of that same month.

On March 31, 1934, at the commencement of the hearing before the commission, counsel for the manager moved to dismiss the appeal, on the ground that the latter had been taken after the expiration of the 30-day period fixed by law. On April 4, 1944, the commission rendered a decision dismissing the appeal, and on the 11th of that same month it denied a reconsideration sought by the petitioner.

The petitioner, wife of the deceased workman, has instituted the present proceeding for review, and she urges that the Industrial Commission erred in dismissing her appeal, which, as she claims, was timely taken.

The record before us shows the following facts:

After the decision of October 19, 1943, denying the claim for compensation, was rendered, the manager sent three copies of his decision to the Chief of the Insular Police with the request that notice thereof be served on the petitioner Paula Castro and her daughter Leonarda Hernández Castro. The first copy bears at the head thereof a notation which reads thus: "This copy should be returned to the State Insurance Fund." The remaining two copies were to be delivered to the above-mentioned beneficiaries.

On October 27, 1943, the District Chief of Police of Moca, who was charged with serving the notice on the beneficiaries, reported to the State Fund that on that same date "he notified the contents of three (3) copies," which had been sent to him for the purpose of being served, to Mrs. Castro and her daughter, "who refused to sign the above-mentioned notice." The report of the said Chief ends thus: "For the reasons stated *I hereby return said copies, unserved,* to the Manager of the State Fund and for such purposes as he may deem proper." The three copies were returned to the manager and form part of the record submitted to us. Notwithstanding the recital of said report, on the back of the copy marked for return to the manager there appear two rubber-stamped "Certificates of Service." One of them reads thus: "Certificate of Service. I certify that on this 27th day of October 1943, at 9:00 A.M., I personally notified the present decision to Doña Paula Castro at_____, by delivering to her an exact copy of the same. Signed: A. Rosa Cordero, District Chief 8th Class." The other certificate refers to Leonarda Hernández and is drafted in like terms. In the margin of each certificate there appear the words "she refused to sign," written in pencil.

At the hearing before the commission, Amalio Rosa Cordero, District Chief, testified that after receiving the copies of the decision of the manager, he sent word to Mrs. Castro and her daughter to come to his office. When they arrived, he read out the decision to them and requested them to sign the same, and they refused, saying that their counsel had instructed them not to sign. That notwithstanding such refusal, he stated to them that they had been notified and then he tendered a copy to each of them, and they stated that they did not want the copies, which they left on his desk after informing him that they did not accept them. That he thereupon returned the copies with the corresponding report. That the above-mentioned women did not retain any copy of the decision.

Upon being called to testify before the commission, Paula Castro stated that the Chief of Police had summoned her to receive certain papers; that the Chief read out the papers to her and tendered some copies to her, but she did not take them because she did not deem it advisable to do so; that "even though no one had advised me, I knew that I had a right and claim"; that her daughter was present and a copy was tendered to her but she also refused to take it.

In accordance with § 10 of Act No. 45 of 1935, as amended by Act No. 43, approved April 22, 1942, the period for taking an appeal from a decision of the manager is 30 days, counted from the date on which notice of the decision is served on the beneficiaries or interested parties.

The only question to be decided herein is whether the acts performed by the police officer, in an attempt to serve notice on the beneficiaries, could and should be considered as the service of notice which the law requires in order to start the running of the statutory period of 30 days for filing the notice of appeal.

Rule 5(b) of the Rules of Civil Procedure, in force since September 1, 1933, provides as follows:

"(b) *Service: How Made.*—Whenever under these rules service is required or permitted to be made upon a party represented by an attorney the service shall be made upon the attorney unless service upon the party himself is ordered by the court. *Service upon the attorney or upon a party shall be made by delivering a copy to him* or by mailing it to him at his last known address . . . Delivery of a copy within this rule means: handing it to the attorney or to the party; or leaving it at his office with his clerk or other person in charge thereof; . . ."

In the case at bar, the manager could have served notice on the beneficiaries by mailing to them copies of his decision; but he elected the method of personal service and requested the Chief of Police to make such service. Said Chief, undoubtedly seeking to perform in good faith the task entrusted to him, did many things which he was not bound or entitled to do but left undone what was essential to the validity of the service. He was not bound to read out to the beneficiaries the text of the decision of the manager, and the fact that he read it out to them does not constitute a proper service of notice. Although he had no right to do it, he demanded from the petitioners that they sign or affix their fingerprints to the copy of the decision which he had just read out to them and they, in the exercise of their rights, refused to do so. He offered or attempted to deliver to the beneficiaries the copies of the decision which had been sent to him for the purpose of such delivery, and upon being informed by the beneficiaries that they were not willing to accept said copies, the Chief, instead of placing them in their hands or within their reach and at their disposal, kept them in order to return them, "unserved," to the manager. If he had confined himself to delivering or placing in the hands or within reach of the beneficiaries the copies of the manager's decision, the service of notice would have been made in accordance with the above-quoted rule.

The conflict existing between the report of the Chief of Police to the manager and his certificate of service is patent.

The report states that the beneficiaries had refused to sign and that for that reason "I hereby return said copies, unserved." The certificates set forth that notice of the decision was personally served on each of the beneficiaries "by delivering to her an exact copy of the same." The conflict was resolved by the Chief himself when he testified that he returned the two copies to the manager and that he had not delivered any copy to the persons on whom he attempted to serve the notice.

The Industrial Commission erred in holding that the appellant, Paula Castro, had been duly served with notice and that her appeal had not been taken in time.

The decision appealed from must be reversed and the case remanded to the Industrial Commission for further proceedings not inconsistent with this opinion.